The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Lawrence B. Shuping, Jr. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award.
* * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
STIPULATIONS
1. A Pre-Trial Agreement which stipulated to jurisdictional and factual issues dated July 18, 1994 is hereby incorporated herein by reference.
2. Deposition testimony of Drs. Lang, Hamilton, Anthony, and Hanson, as well as, deposition testimony of company nurse Meryl Brown is hereby made a part of the evidentiary record.
3. Medical records from Dr. MacNeese are hereby made a part of the evidentiary record.
* * * * * * * * * * *
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
FINDINGS OF FACT
1. Plaintiff is an unemployed, forty-three year old right-handed female with an eleventh grade education who last actually worked for defendant-employer on September 3, 1993, but was subsequently terminated from its employ on September 25, 1993 for "occurrences" based on her alleged unexcused absences from work. Prior to working for defendant-employer she was employed in a sewing factory for four years similarly involving the type of repetitive use of the hand responsible for her developing the disabling bilateral carpal tunnel syndrome giving rise hereto resulting in her being unable to return to that particular type of work.
2. In 1988 plaintiff became employed as a trimmer in the deboning department of defendant-employer's poultry processing plant responsible for using scissors to trim defects off chicken breasts at a rate of approximately eight breasts per minute requiring her to repetitively use both hands in the course of performing this same job. With her left hand she would remove each of the individual chicken breast to be trimmed and hold it in that hand while trimming the breast with scissors in her dominant right-hand.
3. The involved claim is one for disabling carpal tunnel syndrome due to the above described manner that plaintiff had to repetitively use both hands in the course of her regular job as a trimmer in the deboning department of the defendant-employer's poultry processing plant, which (disease or condition) is characteristic of or peculiar to the poultry processing trade, wherein, as compared to members of the general public and other employments at large, there is an increased risk of developing the same disease or condition.
4. Carpal tunnel syndrome occurs when there is an inadequate blood supply to the median nerve injuring this same nerve and can result in both sensory and motory impairment manifested by symptoms of pain, numbness and weakness. The condition can be treated either conservatively or surgically by cutting or releasing the overlying transverse carpal ligament decompressing the median nerve and in the majority of the cases the condition does not recur after surgery.
5. Due to the above described manner that she had to repetitively use her hands in the course of her regular trimmers job for defendant-employer plaintiff developed bilateral carpal tunnel syndrome manifested by pain, tingling and numbness in her hands.
6. By the time she initially sought medical treatment from her family physician on July 26, 1993 plaintiff's symptoms had become incapacitating and the same physician, Dr. D. R. Lang, diagnosed her bilateral carpal tunnel syndrome and provided a conservative course of treatment consisting of medication and a two-week leave of absence from work.
7. Because her condition had not improved, when she returned to Dr. Lang on August 6, 1993, he prescribed a high dose steroid, Prednisone, and released her to return to her regular trimmers job on August 16, 1993 based on the assumption that her condition would improve with the same medication enabling her to return to work.
8. Unfortunately, however, her condition did not improve as Dr. Lang anticipated. When plaintiff did attempt to return to work on August 16, 1993 wearing a splint on her more severely affected left hand and indicated that she had been diagnosed with carpal tunnel syndrome, defendant-employer referred her for evaluation to Dr. Katherine MacNeese, who saw plaintiff four days later.
9. Dr. MacNeese also attempted a conservative course of treatment consisting of medication and a wrist splint to be worn both while sleeping and at work, released plaintiff to modified work off the trimming line, and scheduled her to return for re-evaluation on September 3, 1993.
10. Despite her continuing bilateral hand problems, plaintiff did attempt to return to the type of modified work Dr. MacNeese had recommended until returning to Dr. MacNeese for re-evaluation on September 3, 1993, at which time Dr. MacNeese recommended that she be scheduled for a diagnostic EMG and nerve conduction studies and released plaintiff to return to her regular trimmers job on September 6, 1993 on a modified basis that involved plaintiff rotating every two hours between the trimmers job and another job, which plaintiff remained incapable of doing because the modified work would have still required the type of repetitive hand use responsible for her developing bilateral carpal tunnel syndrome in the first place.
11. In the interim, plaintiff not only took a week's vacation from September 6, 1993 until September 13, 1993, but because of her incapacitating hand problems, sought medical treatment from Dr. M. R. Anthony, another local family practitioner, who saw her on September 13, 1993, diagnosed her bilateral carpal tunnel syndrome and provided a conservative treatment consisting of splinting, medication and resting her hands for several weeks by excusing her from working, which she had remained unable to do since September 3, 1993 because of her bilateral carpal tunnel syndrome.
12. Although Dr. MacNeese recommended that plaintiff undergo a diagnostic EMG and nerve conduction studies by the neurologist, Dr. Robert Hansen, who weekly came to its Lewisville plant; when plaintiff was seen by Dr. Hansen on September 23, 1993 she did not undergo the same diagnostic tests.
Based on his examination of September 23, 1993 Dr. Hansen also recommended that plaintiff undergo these same diagnostic tests and that she receive a continued conservative course of treatment for her hand problems consisting of medication and physical therapy. Defendant-employer, however, never arranged for plaintiff to undergo the diagnostic testing recommended by both Dr. MacNeese and Dr. Hansen or the physical therapy by Dr. Hansen as well as Dr. Anthony before him; but rather, two days later terminated plaintiff from its employ for "occurrences." Plaintiff did not have the financial resources to obtain that treatment herself.
13. On October 1, 1993 plaintiff returned to Dr. Anthony, who because of her continued incapacitating hand problems referred her to an orthopedic surgeon, Dr. Gene Hamilton, who has since continued to provide her with a conservative course of treatment primarily consisting of medication and splinting and has also recommended physical therapy, which plaintiff has been financially unable to afford. Although plaintiff has been out of work since September of 1993 and has received a continuing course of conservative treatment; her condition has not significantly improved enabling her to return to work and as a result Dr. Anthony concurs with Dr. Hamilton's recommendation that plaintiff is in need of corrective surgery for her carpal tunnel syndrome.
14. Plaintiff was ultimately seen by Dr. Hamilton at the Specialty Clinic in Windsor on three occasions, January 20, 1994, February 17, 1994 and March 11, 1994 and he similarly provided a course of treatment before attempting any type of corrective surgery; but contemplated corrective surgery if plaintiff's condition did not improve with conservative treatment within a month of when he last saw her. Because plaintiff has continued to experience incapacitating hand symptoms as a result of her bilateral carpal tunnel syndrome despite conservative treatment and avoidance of the repetitive work responsible for the same condition, Dr. Hamilton recommends that she undergo surgical decompression of carpal tunnel.
15. Until she does undergo the decompressive carpal tunnel surgery recommended by Dr. Hamilton or otherwise requires continued conservative treatment for her incapacitating bilateral carpal tunnel syndrome, plaintiff has not reached maximum medical improvement and remains unable to return to her regular trimmers job or any other work similarly involving repetitive hand use which is the only type of work she has ever done. Even assumingarguendo that at times during the healing period plaintiff has remained capable of alternate lighter work, defendant-employer has never offered to provide her such work; but rather, terminated plaintiff from its employ on September 25, 1993. Considering the nature and extent of plaintiff's incapacitating bilateral hand pain, there is further no evidence that she is even capable of alternate light duty work were defendant-employer to offer it or were she not in the healing period requiring her to make some independent effort to look for light duty work during the healing period when defendant-employer never offered her suitable alternate light duty work or that type of work was available for someone of plaintiff's age, education, background and work experience having the physical limitations that she does from her incapacitating bilateral carpal tunnel syndrome — much less that plaintiff could even obtained such work.
16. On one hand defendant-employer cannot deny liability for plaintiff's disabling bilateral carpal tunnel syndrome as it has continued to do in the instant case and on the other select or dictate the physician or physicians by whom she was treated or the type of treatment received; but rather, under those circumstances plaintiff was free to choose her own physicians and course of treatment so long as the same was reasonably designed to tend to effect a cure of, provide either relief from and/or lessen the period of disability associated with her disabling hand condition, which the hereinabove described treatment that has been provided and/or recommended by Drs. Lang, Anthony and Hamilton was and did; thereby obligating defendants to bear the expense of that treatment, including as part thereof the corrective surgery recommended by Dr. Hamilton, assuming that he still recommends corrective surgery.
17. Defense counsel filed a Motion for Attorney Fees as a result of the last minute cancellation of Dr. MacNeese's deposition by plaintiff's counsel under the circumstances described in this same Motion. Had the actions of plaintiff's counsel required the matter again being rescheduled for Dr. MacNeese's deposition, the undersigned would have granted defense counsel's Motion; however, the Motion is denied because the parties were able to stipulate Dr. MacNeese's records in lieu of a deposition obviating the necessity of defense counsel appearing a second time.
18. During the period that she was placed on a leave of absence by Dr. Lang, plaintiff received benefits under a non-contributory disability plan defendant-employer provided for its employees, which were not due and payable under the Workers' Compensation Act because of the same employer's denial of the involved claim entitling it to a credit for those benefits.
19. For the reasons stated in defense counsel's statement of contention the undersigned cannot say that this matter was defended without reasonable ground based on stubborn, unfounded litigiousness.
* * * * * * * * * * *
Based upon the findings of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. Due to the manner that she had to repetitively use her hands in the course of her regular trimmers job in the deboning department of the defendant-employer's poultry processing plant plaintiff has developed disabling bilateral carpal tunnel syndrome, which (disease or condition) is due to causes and conditions that are characteristics of and peculiar to her employment in the same trade, but excluding all ordinary diseases of life to which the general public is equally exposed outside of that employment. Thus plaintiff has developed a compensable occupational disease pursuant to the provisions of N.C. Gen. Stat. § 97-53(13).
2. As a result of the occupational disease giving rise hereto plaintiff has remained totally disabled since last working for defendant-employer on September 3, 1993 entitling her to compensation at the rate of $153.41 per week from September 3, 1993 to the scheduled hearing date and thereafter continuing the same rate so long as she remains totally disabled, subject to a change of condition, or further order of the Commission.
3. To the extent the same are reasonable designed to tend to effect a cure of, provide either relief from and/or lessen the period of disability associated therewith defendant is obligated to pay all reasonable necessary medical expenses incurred by plaintiff as a result of the occupational disease giving rise hereto, including as part thereof, corrective surgery should Dr. Hamilton still recommend the same.
4. For the reasons stated in the above findings of fact this matter was not defended without reasonable ground based on stubborn, unfounded litigiousness. N.C. Gen. Stat. § 97-88.1.
* * * * * * * * * * *
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
AWARD
1. Defendant shall pay plaintiff, on account of her continuing total disability, compensation at the rate of $153.41 per week during the period from September 3, 1993 and thereafter continuing at the same rate so long as she remains totally disabled, subject to a change of condition, whether of a medical or employment nature. Such compensation as has accrued hereunder shall be paid in a lump sum, without commutation, subject to a reasonable attorney fee hereinafter approved.
2. At this time a reasonable attorney fee in the amount of 25 percent of the accrued compensation benefits due under the above Award is hereby approved for plaintiff's counsel, which shall be deducted from the same Award and forwarded directly thereto. For the balance of her fee defendant shall forward every fourth compensation check payable hereunder directly to plaintiff's counsel.
3. To the extent the same are reasonable designed to tend to effect a cure of, provide needed relief from and/or lessen the period of disability associated therewith defendant shall pay all reasonable necessary medical expenses incurred by plaintiff as a result of the occupational disease giving rise hereto, including as part thereof, corrective surgery should Dr. Hamilton still recommend it, when bills for the same are submitted in accordance with Industrial Commission rules.
4. Defendant shall bear the costs, including as part thereof, the expert witness fees previously awarded, Drs. Hamilton, Hansen, Lang and Anthony to the extent the same have not already been paid, but not attorney fees pursuant to the provisions of N.C. Gen. Stat. § 97-88.1 because for the reasons stated in the above findings of fact, this matter was not defended without reasonable ground based on stubborn, unfounded litigiousness.
 S/ ________________________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
S/ _______________________ BERNADINE S. BALLANCE COMMISSIONER
S/ _______________________ COY M. VANCE COMMISSIONER
DCS:bjp